**Hecker Fink LLP**

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

ametz-dworkin@heckerfink.com

September 2, 2025

**BY ECF**

The Honorable Nina R. Morrison
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Yashiya Louisdor et al.,* 24 Cr. 187 (NRM)

Dear Judge Morrison:

We respectfully submit this letter on behalf of Yashiya ("Pepe") Louisdor ("Mr. Louisdor"), who is scheduled to be sentenced by Your Honor on September 24, 2025 at 2:00 p.m. On February 14, 2025, Mr. Louisdor pleaded guilty to Count Four of the May 7, 2024 indictment (the "Indictment"), which charged him with unlicensed firearms dealing under 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), 2 and 3551 et seq.

Mr. Louisdor is twenty-four years old. He is a loving brother, son, and grandson. There is no question that Mr. Louisdor made serious mistakes that led to his prosecution in this case, and he fully accepts responsibility for his conduct. But in the 15 months since Mr. Louisdor was arrested, and the 13 months since he was released by Your Honor to home detention, he has taken concerted, meaningful steps towards bettering himself and becoming the man he hopes and believes he can be. He has enrolled in a GED program, and is continuing to pursue his certificate, and spent significant time at Project H.O.O.D. ("Helping Our Own Develop")[1] a youth empowerment program dedicated to eliminating gun violence. His mentor at Project H.O.O.D. reports that Mr. Lousidor "has shown a level of personal growth and maturity that is both rare and commendable"; that "[Mr. Louisdor] shows up consistently, brings positive energy, and sets a strong example of discipline and accountability"; "[Mr. Louisdor] is not only addressing past choices, but actively building a future he can be proud of'"; and that "[w]ith continued support, structure, and guidance…[Mr. Louisdor] can become a strong and contributing member of our community. He already is." Exhibit F.

Mr. Louisdor is a young man with a great deal of life and promise ahead of him, and he is dedicated to continuing to work towards a better, law-abiding future—both for himself and for his

---

[1] https://www.jccgci.org/programs/community-services/operation-h-o-o-d/.

family, who will continue to support him after he has served the sentence that Your Honor deems appropriate.

The significant steps Mr. Louisdor has taken during the past year to better himself will also decrease his likelihood of recidivism. To permit him to continue on his upward trajectory, as well as for the other reasons described below, we respectfully submit that a below-Guidelines sentence of time served, followed by a substantial term of supervision with continued home detention, is sufficient, but not greater than necessary, to serve the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

I.     **Mr. Louisdor's Background**

Mr. Louisdor is a lifelong resident of Brooklyn. He is a member of a tight-knit community and family. And he is a devoted brother, son, and grandson. He takes pride in caring for his family. Mr. Louisdor was raised by his mother and her family, and he spent some time in Georgia with his father during his adolescence. He is the eldest of his mother's four children. Mr. Louisdor's siblings, ages 18, 17, and 8, reside in Staten Island with their mother. Mr. Louisdor's father has been based out of state for nearly 20 years. Mr. Louisdor's mother and father lived together for a brief period, but his father left soon after Mr. Louisdor was born. His mother, Nahumy Jean Louis, has raised Mr. Louisdor and his younger siblings with the help of his maternal grandmother, Mimose Lambert, with whom Mr. Louisdor currently resides on home detention.

When Mr. Louisdor was a child, his family did not always have enough money to cover their basic needs. And because Mr. Louisdor's father, a truck driver, lived nearly a thousand miles away, he grew up without a present father figure. Prior to his arrest in this case, Mr. Louisdor enjoyed taking his younger brothers to the movies and out to eat. They also enjoy reading and watching anime together. When Mr. Louisdor was in middle school and high school, he often helped his mother take care of his brothers—picking them up from school and looking after them while their mother worked. Now, with one of his brothers a recent high school graduate and the second set to graduate next spring, Mr. Louisdor's priority is his little sister. He enjoys picking her up from school, helping her with her schoolwork, and playing with her. Being apart from his siblings over the past 15 months has been difficult for Mr. Louisdor, and his desire to be a part of his siblings' lives and a role model for them is an important motivator for him with respect to staying on track and out of trouble.

Mr. Louisdor attended public high school, primarily at Liberation Diploma High School in Coney Island, where he was on an Individualized Education Program ("IEP"), until the twelfth grade. For a brief time, while staying with his father, he attended Meadowcreek High School in Norcross, Georgia. Mr. Louisdor did not complete his high school credits or receive a diploma. However, over the last 13 months since his release from the MDC, he has been working hard to obtain his GED, attending class at Kingsborough Community College for five hours per day, five days a week. *See* Receipt for Kingsborough Community College GED Program, Exhibits G & H. Although Mr. Louisdor did not pass the GED exam on his first attempt, he has enjoyed his classes and is gearing up for a second attempt.

Mr. Louisdor is not close to his father, who has not provided the family with financial support. Nor have the fathers of Mr. Louisdor's siblings, leaving Mr. Louisdor's mother as both

primary caretaker and primary breadwinner for their family of five. Mr. Louisdor has a strong desire to help his mother and provide for her and his younger siblings, and he hopes that his work in a GED course and at Operation H.O.O.D. will lead to gainful opportunities and employment.

Several of Mr. Louisdor's relatives, as well as his Operation H.O.O.D. outreach coordinator, have written letters to Your Honor in support of Mr. Louisdor. Those letters reflect the changes in Mr. Louisdor over the past year and the loving and supportive team Mr. Louisdor has on his side to help ensure he stays on a law-abiding path going forward.

*Mimrose Lambert, Mr. Louisdor's maternal grandmother*, writes that she has seen "a different Pepe ever since he was released under [her] temporary care by Probation." She notes that Mr. Louisdor went back to school to get his high school diploma and did so "with glee." She also believes that he will become a valuable member of society. Exhibit A.

*Nahumy S. Jean-Louis, Mr. Louisdor's mother*, writes that he has a big heart and is a protective and compassionate brother and son. She explains that seeing the mistakes Mr. Louisdor made in connection with this case is extremely painful for her, because she knows those choices do not "reflect the values that [she] taught him or what [her] family represents." She is "ashamed and embarrassed by his actions" and notes that "they are not who he truly is." She does not excuse his mistakes, but she writes that they were "wrong morally and ethically," and that Mr. Louisdor "has expressed deep regret." Exhibit B.

███████, *Pepe's younger brother*, writes of Mr. Louisdor's example and teaching, and the sacrifices he makes for his family—in particular his younger siblings. He "asks that Your Honor afford as much leniency as you can so that Mr. Louisdor can "come back home to [them] in pursuit of a greater future." Exhibit C.

███████, *Pepe's younger brother,* writes about Mr. Louisdor teaching him and taking care of him when he was young. He knows that Mr. Louisdor has made bad choices, and also knows that his brother is a genuinely good and caring person who "will make something of it." Exhibit D.

*Umberto P. Jean-Louis, Mr. Louisdor's maternal uncle*, notes that while his criminal behavior was extremely "reprehensible and condemnable," he believes Mr. Louisdor has "finally learnt his lesson." He also writes that he has witnessed Mr. Louisdor "reading books, preparing homework and other school-related activities while living at [his] mother's house." Mr. Jean-Louis also notes that Mr. Louisdor "has vowed to focus on his education and to become a valuable citizen of his community." Exhibit E.

*Samuela Zulueta, Mr. Louisdor's Outreach Worker at Operation H.O.O.D.*, writes that "Mr. Louisdor has made meaningful and consistent efforts to turn his life around. He also notes that Mr. Louisdor "has shown a level of personal growth and maturity that is both rare and commendable." He notes that Mr. Louisdor has "stepped up as a volunteer in our youth boxing program, working with kids who look up to him as a mentor. His dedication to giving back is sincere and impactful…Beyond his volunteer work, he has taken further steps to better himself by enrolling in counseling services and pursuing his GED. He is not only addressing past choices, but actively building a future he can be proud of. He is

Hecker Fink LLP

4

surrounding himself with positive influences and putting in the work necessary to stay on a better path.  Exhibit F.

Mr. Louisdor's family members and friends have supported him since his arrest by co-signing a $100,000 bond to secure his release from MDC.  In addition, his grandmother, Ms. Lambert, has provided him shelter and a loving home in which to serve his home detention, helping to ensure he remains complaint with the Court's conditions, and supporting him as he navigates his Operation H.O.O.D. programming and GED coursework.

In short, Mr. Louisdor has been working hard to improve himself.  He is determined to steer clear of the poor choices and harmful influences that resulted in his conduct in this case.  Against this backdrop, we respectfully submit that additional incarceration would have diminishing returns with respect to the safety of the community, Mr. Louisdor's rehabilitation, and specific deterrence.  Rather, additional incarceration would hinder his ongoing progress and his efforts to become a responsible, productive member of society.

## II.     The Sentencing Framework: The Guidelines and 18 U.S.C. § 3553(a)

When sentencing, a Court must consider both the applicable range of punishment outlined in the Sentencing Guidelines (the "Guidelines"), as well as the sentencing factors enumerated in 18 U.S.C. § 3553(a), to fashion a sentence that is "sufficient, but not greater than necessary" to satisfy the statutory aims of sentencing. With respect to the Guidelines, Mr. Louisdor's total offense level should be 29, assuming the Court agrees that he is entitled to a one-point reduction because all four co-defendants entered into a timely global plea with the government.  United States Sentencing Guidelines § 5K2.0; *see also* Plea Agreement at ¶ 2; Presentence Investigation Report ("PSR") ¶ 85.  Because Mr. Louisdor has five criminal history points and a corresponding criminal history level of III, the Guidelines range is 108 to 135 months of imprisonment.[2]  However, his effective Guidelines range is 60 months' imprisonment, the statutory maximum.

The Sentencing Guidelines are "not mandatory on sentencing courts" and are "not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (emphasis omitted). In imposing a sentence, courts are required to consider the factors set forth in 18 U.S.C. § 3553(a) to create an "individualized assessment" based on a defendant's particular circumstances. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc).

To determine the appropriate punishment under 18 U.S.C. § 3553(a), a court "shall consider" a number of factors, including: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §

---

[2] In the Plea Agreement, the parties agreed that Mr. Louisdor had four criminal history points and a corresponding Criminal History Category of II.  However, due to a state sentence imposed since Mr. Louisdor's plea in this case, the PSR correctly states that his Criminal History Category is now III. PSR ¶ 50.

3553(a). The Court must also consider "the kinds of sentences available" for the offense, and "the kinds of sentence and the sentencing range established for" the offense as set forth in the Guidelines, as discussed above, as well as "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.*

### III. A Sentence of Time Served with Home Detention Is Sufficient But Not Greater Than Necessary for Mr. Louisdor

For the reasons set forth below, we respectfully submit that a below-Guidelines sentence for Mr. Louisdor of a substantial period of supervision, including home detention, is consistent with the § 3553(a) factors.

Mr. Louisdor knows that his criminal conduct was inexcusable and deeply regrets the choices he made. Over the past year, Mr. Louisdor has had a chance—through therapy and volunteering at Operation H.O.O.D., and the new opportunities and community he has been exposed to at his GED program at Kingsborough Community College in Brooklyn—to reflect on his poor choices and the circumstances in which he made them: he had recently returned home from serving time on Rikers Island, and was struggling to find a job to cover his basic financial needs and those of his family. And so, he made a series of bad decisions, each reinforced by the success of the last. He never stopped for long enough to think clearly about the possible consequences of his actions—for himself, for his family, or for his community.

To be clear, economic hardship and difficulty reintegrating into society do not in any way excuse Mr. Louisdor's conduct. But it does provide context for understanding how Mr. Louisdor ended up before Your Honor and, we respectfully submit, militates in favor of a non-incarceratory sentence that would best support Mr. Louisdor's ongoing efforts to become a productive member of society.[3] The continued structure and supervision that probation, home detention, and school or employment provide will best position him for the type of continued growth that will ensure both his own rehabilitation and the safety of the community. *See* § 3553(a)(2)(C).

Through his efforts over the past year, and having served time at MDC and facing his first sentence in a federal criminal case, Mr. Louisdor comprehends the severity of the errors he has made and has taken responsibility for them. And he is determined to not make those same mistakes again. Indeed, over the past year, Mr. Louisdor—who was only 23 at the time of his arrest in this case—has demonstrated that he has the capacity to change.[4] While on home detention, Mr.

---

[3] Richard Mendel, *Why Youth Incarceration Fails: An Updated Review of the Evidence*, THE SENTENCING PROJECT (Mar. 1, 2023), https://www.sentencingproject.org/reports/why-youth-incarceration-fails-an-updated-review-of-the-evidence/ ("State-level data on recidivism consistently show that youth who are released from correctional confinement experience high rates of rearrest, new adjudications (in juvenile court) or convictions (in adult court), and reincarceration…Research studies that control for young people's backgrounds, offending histories and other relevant characteristics have found that confinement most often results in higher rates of rearrest and incarceration compared with probation and other community alternatives to confinement.").

[4] Mr. Louisdor's capacity for change and rehabilitation is reinforced by his young age. *See* U.S. Sent'g Comm'n, Youthful Offenders in the Federal System at 5-6 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf (explaining that the Sentencing Commission has defined "youthful offenders" as those 25 years and younger, informed by "recent case law and neuroscience research in which there is a growing recognition that people may not gain full reasoning skills and

Hecker Fink LLP                                                                                                                6

Louisdor has taken advantage of the opportunity to grow, mature, and avoid the dangerous influences that have clouded his judgment in the past. And he is succeeding. Through his volunteer work at Operation H.O.O.D., where he mentors young people, and his GED course, where his family has seen him start to thrive after previously dropping out of high school, he has shown that he is committed to improving his circumstances—without resorting to illegal conduct. A sentence of probation with home detention would best provide Mr. Louisdor with the ongoing emotional, educational and vocational training that he needs to succeed and to maintain his path away from criminal conduct. *See* § 3553(a)(2)(D).

A sentence of probation with court-mandated home detention would also adequately reflect the serious nature of the offense. *See* §§ 3553(a)(2)(A) & (D). As preliminary matter, Mr. Louisdor has already served two months at the MDC and over a year on home detention.[5] Moreover, when considering the nature of the offense, it is important to note the scope of Mr. Louisdor's involvement in the conspiracy. While Mr. Louisdor introduced the undercover officer to one of his co-defendants, who had access to the firearms that were sold, and facilitated certain of the sales of firearms in question in Brooklyn, he did not procure or transport the firearms from out of state to New York. Furthermore, Mr. Louisdor is not alleged to have introduced the undercover officer to the other two co-defendants, nor is he alleged to have been involved in the attempted sale of an additional 33 firearms in Manhattan by two of his co-defendants. PSR ¶ 19 (noting Louisdor's offense involved at least 20 firearms); ¶ 22 (noting Seals' offense involved at least 64 firearms); ¶ 25 (noting Alman's offense involved at least 39 firearms); ¶ 28 (noting Luwoye's offense involved at least 7 firearms).

A sentence of home detention would also serve the goal of deterrence—rather than stalling Mr. Louisdor's progress by retuning him to prison, home detention would provide him the opportunity to continue on this new path, all while under supervision, with limited freedom, and the knowledge of the potential consequences of violating the terms of his release. *See* § 3553(a)(2)(C). Finally, a significant term of home detention would avoid unwarranted sentencing disparities between Mr. Louisdor and those who have received below-Guidelines sentences—including to supervised release and home detention—in other cases in the Eastern and Southern Districts of New York. *See* § 3553(a)(6); *see also, e.g.*, *United States v. Hall*, 24-cr-151 (PGG) (S.D.N.Y. Mar 18, 2024) (defendant sentenced to time served after being out on supervised release in a case involving ghost guns, where government requested 18 to 24 months' imprisonment); *United States v. Boatwright*, 23-cr-488 (DLI) (E.D.N.Y. Nov 28, 2023) (defendant sentenced to five years of probation for firearms trafficking, where government requested 15 to 21 months and the Guidelines range was 46 to 57 months); *United States v. Dejesus*, 23-cr-349 (RPK)

---

abilities until they reach age 25 on average…That research has focused on the prefrontal cortex of the brain, which is located at the front of the frontal lobe and is the last part of the brain to fully develop. The prefrontal cortex is utilized in impulse control, emotional reactions, executive function and decision making. Development of the prefrontal cortex involves both biology and sociocultural experiences.").

[5] As courts and the Guidelines recognize, home detention is punitive. *United States v. Wood*, 2025 WL 1373419 at *2 (E.D. Tenn. May 12, 2025) (rejecting request to suspend non-custodial sentence of home detention, a "substitute for imprisonment," the purpose of which "is to be sufficiently punitive"); *United States v. Floyd;* 738 F. Supp. 1256 (D. Minn. May 31, 1990) (departing from Guidelines and sentencing defendant who plead guilty to cocaine distribution to six-month sentence of home detention, which was "sufficiently punitive…[because] the defendant's freedom [was] restrained substantially [and] [f]ull incarceration would be unwarranted and useless."); U.S.S.G. § 5F1.2.

Hecker Fink LLP

7

(E.D.N.Y. Aug 28, 2023) (defendant sentenced to four years of probation for firearms trafficking over two-month time period, where government sought Guidelines sentence of 6 to 12 months imprisonment); *United States v. O'Berry,* 18 Cr. 276 (JSR) (S.D.N.Y. Dec. 6, 2018) (varying downward from Guidelines range of 57 to 71 months to time served with two years of home confinement for gunpoint robbery of bodega).

\* \* \*

For the reasons set forth above, we respectfully request that the Court sentence Mr. Louisdor to a lengthy term of probation with mandatory home detention. Such a sentence would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. It would provide adequate punishment while at the same time allowing Mr. Louisdor to continue on his rehabilitative path so that he never engages in this kind of conduct again.

Respectfully submitted,

*Abra Metz-Dworkin*

Abra Metz-Dworkin
David Gopstein
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
Telephone: (212) 763-0883
ametzdworkin@heckerfink.com
dgopstein@heckerfink.com

cc: (by ECF and email)
AUSA Katherine Onyshko
AUSA Claire S. Kedeshian